**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37455**

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

BRADFORD JEROME FOSTER,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

**2011 Opinion No. 37**

**Filed: June 23, 2011**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment of conviction for felony driving under the influence, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

---

MELANSON, Judge

Bradford Jerome Foster appeals from the judgment of conviction entered upon a jury verdict finding him guilty of felony driving under the influence (DUI). For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Foster was charged with felony DUI, two or more within ten years. I.C. §§ 18-8004, 18-8005(5). Foster pled not guilty and proceeded to trial with counsel. The attorneys conducted voir dire, and Foster's counsel conducted the following colloquy with Juror 5:

> [ATTORNEY]: Number five, what's your name?
> [JUROR]: [States name].
> [ATTORNEY]: What do you do for a living?
> [JUROR]: Human Resources.
> [ATTORNEY]: Okay. How long have you been on your job?
> [JUROR]: Five years.

1

| | |
|---|---|
| [ATTORNEY]: | Okay. Have you ever been a juror before? |
| [JUROR]: | No, I have not. |
| [ATTORNEY]: | Would you like to be one today? |
| [JUROR]: | Yeah, I can give it a try, I guess. |
| [ATTORNEY]: | You would? |
| [JUROR]: | Yeah. |
| [ATTORNEY]: | What if you were on trial here, would you want to have you as a juror? |
| [JUROR]: | Um-hmm (response). |
| [ATTORNEY]: | Tell me why. |
| [JUROR]: | Because I think I am pretty open-minded and fair. I'll listen. |
| [ATTORNEY]: | Okay. You will listen to -- |
| [JUROR]: | Both sides. |
| [ATTORNEY]: | What if he doesn't say anything? |
| [JUROR]: | Then I will listen to you. |
| [ATTORNEY]: | Well, would you have a problem if he didn't testify? |
| [JUROR]: | No. |

The state did not question Juror 5. At the conclusion of voir dire, the attorneys passed the jurors for cause and proceeded to exercise their peremptory challenges. The first juror struck by the state was Juror 5. Foster objected to the challenge, alleging that it was being used to exclude a person from the jury on account of race in violation of the Equal Protection Clause of the United States Constitution. Foster argued that the state was required to offer a race-neutral reason for its use of the peremptory challenge because he, his attorney, and Juror 5 were African American.[1]

Based on the objection, the district court requested that the prosecutor provide a race-neutral explanation for the peremptory strike of Juror 5. The prosecutor explained:

I struck the juror because she was flirting with defense counsel, and . . .
    I felt like she was flirting with defense counsel. I didn't really realize that she was even African American. That wasn't the note that I made.
    . . . .
    She was giggly, she was smiley. She was--I mean . . . it's a woman thing. She was too connected with counsel. I'm allowed to strike jurors for--without cause for those kinds of reasons.

The district court then responded:

    I do recall the question that [defense counsel] asked of this particular juror, and it was very brief. There was very little interaction. So--and I didn't see

---

[1] Juror 5 was the only African American on the panel of potential jurors.

her laughing and giggling anymore than the pleasant appearance I should say of any of the other jurors that would smile at both of your jokes.

In response, the state further explained:

And the other point I would like to make is that [defense counsel] was doing voir dire with the jurors for almost 30 minutes, and I was observing her throughout the entire process, Your Honor, which body language is important. She was very attentive to him.

Now, I want her to listen to the evidence. I don't want her to listen to him. I am allowed to strike jurors for those kinds of reasons period.

The district court then ruled:

I will overrule the challenge. . . . The prosecution has articulated a good faith basis for the challenge other than being racially motivated. And . . . the State is correct, that the nature of preempts is that there is perceived to be a connection beyond normal. I mean, that's the nature of preempts to deselect the jurors that you feel are going to be bad for your side and it has to be on a ground other than race. And I do not believe that--in this case I will accept [the state's] words that it is not done on the basis of race.

Foster was found guilty of felony DUI. He appeals.

## II.

## ANALYSIS

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that discriminatory use of peremptory challenges to exclude persons from jury service on account of their race is a violation of the Equal Protection Clause of the United States Constitution. *Id.* at 85. *Batson* dictates that a trial court, when faced with an assertion that a party has exercised a peremptory challenge in a discriminatory fashion, must apply the following three-part test. First, the party objecting to the peremptory challenge must make a prima facie showing that the challenge was exercised on the basis of race. *Id.* at 93-94; *State v. Araiza*, 124 Idaho 82, 87, 856 P.2d 872, 877 (1993). To establish a prima facie case of discrimination, the defendant must show that the challenged prospective juror is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove from the jury members of the defendant's race. *Batson*, 476 U.S. at 96. Cognizable or identifiable racial groups are those which have historically been subjected to discriminatory treatment and have from time-to-time required aid from the courts in securing equal treatment under the law. *Hernandez v. Texas*, 347 U.S. 475,

3

478 (1954). For the purpose of applying the *Batson* equal protection analysis, a person of African American descent is a member of a cognizable racial group. *See Batson*, 476 U.S. at 85.

Second, if the prima facie showing is made, the burden shifts to the party attempting to exercise the peremptory challenge to articulate a race-neutral explanation for its decision. *Batson*, 476 U.S. at 94. It is not enough for the state to represent that he or she did not exercise its challenges on an impermissible basis; the state must provide a clear and reasonably specific explanation of legitimate reasons for exercising the challenges. *Batson*, 476 U.S. at 98 n.20; *Araiza*, 124 Idaho at 87, 856 P.2d at 877. A potential juror's demeanor can be a race-neutral explanation for a peremptory challenge to a juror. *See Thaler v. Haynes*, ___ U.S. ___, ___ (2010).

Finally, if a race-neutral explanation is given for the peremptory challenge, the trial court must determine whether the party attacking the peremptory challenge has met its burden of proving purposeful discrimination based on race. *Batson*, 476 U.S. at 98. In deciding if the defendant has carried the burden of persuasion, a trial court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. *Batson*, 476 U.S. at 93. Where the explanation for a peremptory challenge is based on a prospective juror's demeanor, the trial court should take into account, among other things, any observations of the juror that the judge was able to make during voir dire. *Thaler*, ___ U.S. at ___. In *Thaler*, the defendant made a *Batson* objection to the peremptory challenge to an African American juror. The prosecutor provided a demeanor-based explanation for the challenge, stating that the juror's demeanor was humorous, not serious, and that her body language belied her true feelings. The Court noted that one judge presided over voir dire, but another judge took over the case when the peremptory challenges were made. In ruling on the *Batson* challenge, the second judge did not have the benefit of direct observation of the jurors during questioning. The Court held that a demeanor-based explanation must not be rejected solely because the judge did not observe or cannot recall the juror's demeanor. *Id*. The trial court must evaluate not only the juror's demeanor, but also whether the prosecutor's demeanor belies a discriminatory intent. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). The determinations of credibility and demeanor lie peculiarly within the trial court's province and, absent exceptional circumstances, we will defer to the trial court's findings. *Id*.

4

The party asserting discriminatory use of a peremptory challenge bears the ultimate burden of persuasion and must show that purposeful discrimination was, in fact, the basis for use of the peremptory challenge. *Araiza*, 124 Idaho at 88, 856 P.2d at 878. The trial court's finding with regard to the state's explanation will be overturned on appeal only if it is clearly erroneous in light of the facts as a whole. *Araiza*, 124 Idaho at 87, 856 P.2d at 877; *State v. Owen*, 129 Idaho 920, 933, 935 P.2d 183, 196 (Ct. App. 1997).

On appeal, the parties do not dispute that Foster made a prima facie showing, under the first step of the *Batson* analysis, that the state's peremptory challenge of Juror 5 was exercised on the basis of race. Juror 5 was the only juror on the panel removed by the state's peremptory challenges who was a member of a cognizable racial group which was shared by Foster. Foster also concedes, under the second prong of the *Batson* analysis, that the state articulated a race-neutral explanation for its peremptory strike of Juror 5. Foster argues, however, that the district court erred in overruling his objection under the third prong of *Batson*. Specifically, Foster argues that the district court's decision was erroneous because the district court's factual finding regarding Juror 5's demeanor did not confirm the race-neutral explanation provided by the state.[2]

The record demonstrates that the district court recalled the brief colloquy which took place between Foster's counsel and Juror 5. The district court indicated it remembered very little interaction between Juror 5 and defense counsel and did not recall Juror 5 laughing, giggling, or acting in a more or less pleasant manner than was demonstrated by the other jurors. Foster argues that, because the district court's observations of Juror 5 did not confirm the reasons provided by the state for the peremptory challenge, the district court's ruling on the *Batson* objection was erroneous. In support of this argument, Foster cites to *Snyder* which emphasizes the importance of the trial court's first-hand observations in determining whether a prosecutor's reliance on a juror's demeanor is a sufficiently race-neutral explanation for a peremptory challenge. *Snyder*, 552 U.S. at 477. The Court's holding in *Snyder* does not, however, stand for

---

[2] Alternatively, Foster argues that, if we determine the district court did not make a specific factual finding regarding the demeanor of Juror 5, the failure to make a specific factual finding about Juror 5's demeanor was, in itself, reversible error. Because we find Foster's first argument to be dispositive, we will not address his second argument on appeal.

the proposition that, where a district court's observations of a juror do not confirm the observations of the party exercising the peremptory strike, there is necessarily a *Batson* violation.

We note that the district court must evaluate not only the juror's demeanor, but also whether the prosecutor's demeanor belied a discriminatory intent. *Snyder*, 552 U.S. at 477. After the district court stated its observation of Juror 5, the state explained that it had been observing Juror 5, not solely during the short colloquy which the district court recalled, but throughout the entire thirty minutes Foster's counsel was conducting voir dire. Immediately after hearing the state's further explanation, the district court overruled the *Batson* objection. Trial courts have broad discretion in formulating the necessary framework for evaluating explanations given by the state for the use of peremptory challenges after a *Batson* objection. The district court is in a better position than we are to determine the motivation of the state in challenging a juror. *Owen*, 129 Idaho at 933, 935 P.2d at 196. Having observed both the demeanor of Juror 5 and that of the state's counsel, it was within the district court's discretion to conclude that the state was not acting with a discriminatory purpose. That the district court's observation of Juror 5 during the colloquy did not confirm the observations of the state is insufficient to make the district court's ruling clearly erroneous in this case. Therefore, we hold that the district court did not err in finding the state's justification for striking Juror 5 was race-neutral and that Foster failed to meet his burden of proving a purposeful discrimination.

## III.

## CONCLUSION

The district court's decision to deny Foster's *Batson* objection was not clearly erroneous. Accordingly, Foster's judgment of conviction is affirmed.

Chief Judge GRATTON and Judge LANSING, **CONCUR.**

6