**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44538**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2018 Unpublished Opinion No. 317** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: January 9, 2018** |
| | ) | |
| v. | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **JOHN C. DOUGLAS,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Judgment of conviction, affirmed.

Silvey Law Office, Boise, Greg S. Silvey, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

John C. Douglas appeals from the district court's judgment of conviction. He argues: (1) the district court erred by denying his *Batson*[1] challenge, (2) he was deprived of effective assistance of counsel, and (3) the district court erred by denying his motion for mistrial. The district court's judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Douglas, an African American, was charged with two counts of murder in the first degree, Idaho Code §§ 18-4001, -4002, -4003(a), and 18-204, and one count of attempted murder in the first degree, I.C. §§ 18-4001, -4002, -4003(a), 18-204, and 18-306, after he shot three individuals, one of whom survived. While awaiting trial, Douglas was incarcerated at the Ada

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

1

County Jail. Presumably because Douglas was arrested in Pennsylvania, he retained counsel from Pennsylvania who was admitted pro hac vice in Idaho. Douglas filed a motion to compel access to counsel,[2] arguing he was being denied access to counsel because his rotating one-hour-a-day of free time was not sufficient for him to contact his Pennsylvania and Idaho attorneys. Douglas requested the district court order jail staff to allow Douglas to call his attorneys during business hours if Douglas so requested. The district court denied the motion because Douglas had not shown a clear denial of access to counsel.

During jury selection, the jurors were asked, "Do you have any opinions about law enforcement officers that might affect your ability to impartially evaluate the testimony of an officer during trial?" One potential juror answered, "Yes. They are unfair to black people." The same juror also expressed that because she had to take her father to chemotherapy every Friday, she would not be able to focus. The State moved to strike the juror for cause and when that motion was denied, exercised a peremptory strike because of the juror's bias against law enforcement and her inability to focus. Douglas raised a *Batson* challenge to the State's peremptory strike, arguing that the State struck the juror on the basis of race because the juror was the only African American person in the jury pool and because Douglas was also African American. The district court concluded there was no overt racial purpose behind the State's peremptory strike and denied Douglas's *Batson* challenge.

During trial, the State called a detective who, in response to the question, "tell us how you tried to figure out who John C. Douglas is," answered:

> We had obviously previously received some information that that person was associated with Pennsylvania. Also, there had been--we'd received a call from, I believe, a DEA agent from back East who said that they had a CI who had mentioned a murder in Boise. Sorry. Confidential informant who mentioned a murder in Boise and said that the person was possibly living in Redington, Pennsylvania.

Defense counsel objected, arguing the statement was hearsay, nonresponsive, extraordinarily prejudicial, and merited the granting of a mistrial. The district court agreed the statement was hearsay and nonresponsive and struck the statement from the record. However, the district court denied the motion for mistrial, explaining the statement was not so prejudicial that the jury could

---

[2]     Douglas was tried jointly with one of his co-defendants who was also African American. Many of the motions were filed and heard jointly.

2

not be instructed to disregard it. The district court instructed the jury to disregard the statement and later instructed the jury that the statement did not constitute evidence.

The jury returned a verdict of guilty on all three counts. The district court sentenced Douglas to two fixed life sentences for the murder counts and a determinate fifteen-year sentence for the attempted murder count, with all sentences running concurrently. Douglas timely appeals.

## II.

## ANALYSIS

Douglas makes three arguments on appeal. First, he asserts the district court erred by denying his *Batson* challenge because the only African American juror was stricken on the basis of race. Second, Douglas contends he was deprived of effective assistance of counsel because the rotating one-hour-a-day free time he received in jail was not sufficient for him to consult his attorneys. Third, Douglas argues the district court erred by denying his motion for mistrial because the inadmissible hearsay statement given by the detective was extraordinarily prejudicial to Douglas and the jury was incapable of disregarding that prejudice.

**A. The District Court Did Not Err When It Denied Douglas's *Batson* Challenge**

A party may exercise a peremptory challenge to a juror for any reason related to the outcome of a case, besides challenges of jurors made solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). This Court evaluates these impermissible, race-based challenges, otherwise known as *Batson* challenges, under a three-part burden-shifting framework.

First, the party objecting to the use of a peremptory challenge must show the challenge was made on the basis of race by pointing to a juror's membership in a cognizable racial group which has historically experienced discrimination and has needed protection from the courts. *State v. Foster*, 152 Idaho 88, 91, 266 P.3d 1193, 1196 (Ct. App. 2011). A "person of African American descent is a member of a cognizable racial group." *Id.*

Second, after the objecting party shows the juror belongs to a cognizable racial group, the burden shifts to the party exercising the peremptory challenge to articulate a race-neutral explanation for its use of the peremptory challenge. *Id.* Unless a discriminatory intent is inherent in the party's explanation, the reason offered will be deemed race neutral. *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

3

Third, if the party exercising the peremptory challenge articulates a race-neutral explanation, the burden shifts back to the objecting party to show the proffered race-neutral explanation is actually pretext for purposeful discrimination. *Foster*, 152 Idaho at 91, 266 P.3d at 1196. In evaluating the objecting party's pretext argument, the trial court considers direct and circumstantial evidence of intent and it's observations of the juror and the party making the peremptory challenge. *Id.* On appeal, the trial court's finding will be overturned only if it is clearly erroneous in light of the facts as a whole. *Id.* at 92, 266 P.3d at 1197.

In this case, Douglas challenged the State's use of a peremptory challenge to strike the only African American juror. Defense counsel identified the juror as African American and as the only juror who shared the same race as Douglas. Identifying the juror as a member of a cognizable racial group shifted the burden to the State to articulate a race-neutral explanation.

The State proffered two explanations: (1) the juror's statement that law enforcement is unfair to black people amounts to actual bias against law enforcement, which would prejudice the State's case because it planned to call two law enforcement officers; and (2) the juror's inability to focus on Fridays when she would normally take her father to receive chemotherapy would be a risk because the State planned to introduce significant, detailed testimony on Friday. The second reason is clearly race-neutral, not invoking or referencing race in any way. The first reason is race-related, but is not race-based. The State did not strike the juror because she was African American. Rather, the State struck the juror because she held a biased opinion against law enforcement. The State's articulation of these explanations shifted the burden back to Douglas to show the State's proffered explanations were actually pretext for purposeful discrimination.

However, rather than argue the State's explanations were pretext, defense counsel took the State "at their word" and accepted the State's explanations as valid. In other words, Douglas abandoned his argument, and thus, waived his *Batson* challenge. Even if Douglas had attempted to fulfill the last step of the *Batson* analysis, the district court's finding that there was no "overt racial purpose behind the strike" was not error. The record does not indicate the State intended to exclude the juror because she was African American. Further, the comparative juror analysis available in the record shows the State listed the juror with at least five other jurors, not of her race, who were being excluded for bias against law enforcement. Because Douglas has not

demonstrated the district court's finding amounts to clear error, we affirm the district court's denial of Douglas's *Batson* challenge.

**B.     Douglas Was Not Deprived of His Right to Assistance of Counsel**

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010). However, where the error in question is a constitutional violation that affects the base structure of the trial to the point that the trial cannot serve its function as a vehicle for the determination of guilt or innocence, the appellate court shall vacate and remand. *Id*. Such structural defects include the complete denial of counsel, a biased trial judge, denial of self-representation, denial of a public trial, defective reasonable doubt instruction, and erroneous deprivation of the right to counsel of choice. *Id*. at 222-23, 245 P.3d at 974-75. Although structural defects require automatic reversal, most constitutional violations will be subject to a harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8 (1999).

"Where an alleged violation of constitutional rights is asserted, an appellate court will defer to a trial court's findings of fact when supported by substantial evidence and freely review the lower court's application of facts found to the constitutional requirements." *State v. Anderson*, 144 Idaho 743, 746, 170 P.3d 886, 889 (2007). The Sixth Amendment to the United States Constitution recognizes the right to the assistance of counsel in order to protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). It contemplates counsel "playing a role that is critical to the ability of the adversarial system to produce just results." *Id.*

Here, Douglas argues his Sixth Amendment right was violated because he could not sufficiently communicate with his attorneys so they could provide him effective assistance. The district court held that Douglas was not deprived of the ability to communicate with his counsel; such a holding is supported by the record. The record shows that during Douglas's rotating one-

5

hour-a-day of free time at the Ada County Jail, he was able to place numerous calls. At the time of Douglas's motion to compel, he had called his Pennsylvania attorney ninety-one times. Twenty-six of those calls were answered, and the resulting conversations lasted for a total time of three hours. Douglas called his Idaho attorney twenty-six times. Six of those calls were answered, and the resulting conversations lasted for a total time of seventeen minutes. Many of these calls to both Pennsylvania and Idaho counsel were placed during business hours. The record also reveals days where Douglas placed no calls to his attorneys. Beyond calls to his attorneys, Douglas placed an additional 408 calls during his free time. Douglas's call log shows he was provided sufficient opportunity to communicate with counsel. Because Douglas has failed to meet his burden of showing a Sixth Amendment violation occurred, we affirm the district court's denial of his motion to compel access to counsel.

## C.     The District Court Did Not Err When It Denied Douglas's Motion for Mistrial

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> The question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.3d 1102, 1105 (Ct. App. 1983).

Here, Douglas made a motion for mistrial after the State's detective gave nonresponsive, hearsay testimony. Because the district court held the testimony inadmissible, it gave a curative instruction to the jury to disregard the evidence and struck the testimony from the record. The district court later instructed the jury that stricken testimony does not constitute evidence. We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it unless there is an overwhelming probability that the jury will be

6

unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant. *State v. Ruiz*, 159 Idaho 722, 725-26, 366 P.3d 644, 647-48 (Ct. App. 2015). Where evidence presents a close question for the jury, a curative instruction might be insufficient to remedy the prejudicial effect of damaging evidence. *Id.* at 726, 366 P.3d at 648.

Douglas argues the jury did not follow the district court's instruction, instead using the detective's testimony to convict Douglas. But Douglas has provided no evidence to show there is an overwhelming probability the jury was unable to follow the district court's instructions, nor that there was a strong likelihood that the testimony was devastating to Douglas's case. Thus, we uphold the presumption the jury followed the district court's instructions and that the inadmissible testimony in no way contributed to Douglas's conviction. Therefore, we affirm the district court's denial of Douglas's motion for mistrial.

## III.

## CONCLUSION

The district court did not err when it denied Douglas's *Batson* challenge. Douglas was not deprived of his Sixth Amendment right to assistance of counsel. The district court did not err when it denied Douglas's motion for mistrial. We affirm the district court's judgment of conviction.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.