# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42362

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 89 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 31, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSE ANTONIO RUIZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction for two counts of lewd conduct with a minor under sixteen and one count of sexual abuse of a child under sixteen, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Jose Antonio Ruiz appeals from his judgment of conviction after he was found guilty of two counts of lewd conduct with a minor and one count of sexual abuse of a child. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Ruiz was charged with two counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508, and one count of sexual abuse of a child under sixteen, I.C. § 18-1506. Prior to trial, Ruiz moved to exclude evidence that he had sent text messages to the victim. In ruling evidence of the content of the messages admissible, the court expressed concern over how the nature of the text messages might be characterized during trial, stating, "My concern here, counsel, is frankly because the jury can't view for themselves the texts but if they are described

1

in some way to be salacious, that would be unfair prejudice when the jury themselves can't look at the texts." The State planned to introduce evidence of content of the messages through testimony from the victim's cousin who saw the text messages on the victim's phone. The State agreed to instruct the witness not to describe the texts as explicit during her testimony.

The State's first witness was the victim's father. During direct examination by the State, the father stated, "[the victim's cousin] told me that she had seen text messages to [the victim] from [Ruiz] and that they were in a sexual matter or explicit." Ruiz objected to the father's statement, and the district court excused the jury so as to discuss the objection with counsel on the record. Both parties and the district court agreed that the victim's father's testimony violated the court's pretrial evidentiary ruling. Ruiz moved for a mistrial, arguing that a curative instruction would not remedy the prejudicial effect of the testimony. The court ultimately denied Ruiz's motion for mistrial, instead giving the following instruction to the jury:

> Ladies and gentlemen of the jury, [the victim's father] did not see any of the text messages that you may hear testimony about later in this case. His characterization or any other person's characterization of those text messages is not relevant and it's not something you should consider. I want you to strike from your mind his testimony about the text messages and any characterization about them. You're to consider only what you hear the testimony the actual content of any text messages are. And then it is up to you and only you to determine the relevance of those text messages and their import on this case. No one's characterization of them should be considered by you.

The court then inquired whether any of the jurors felt that they could not follow that instruction and none of them indicated that they would be unable to do so.

During closing arguments, the prosecutor stated, "In order to acquit [Ruiz], you have to disbelieve the state's witnesses and you have to believe that [the victim] made it all up . . . And so through this lens, this view of the evidence, I'll now go through the evidence of the crime." The jury returned a guilty verdict on all counts. Ruiz timely appeals.

## II.

## ANALYSIS

Ruiz raises two issues on appeal. First, Ruiz contends that the district court erred in denying his mistrial motion. Second, he argues that the prosecutor committed misconduct during closing arguments by misstating the reasonable doubt standard and that this misconduct constituted fundamental error. We address each issue in turn.

2

**A.       Denial of Ruiz's Motion for Mistrial**

Ruiz asserts that the district court erred in denying his motion for a mistrial following the victim's father's testimony that the text messages were "in a sexual matter or explicit." Ruiz asserts that this characterization of the text messages was prejudicial and deprived him of a fair trial. Moreover, he asserts that the curative instruction was insufficient to remedy the prejudicial effects of the testimony.

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.3d 1102, 1105 (Ct. App. 1983). An error is harmless, not necessitating reversal, if the reviewing court is able to declare beyond a reasonable doubt that the error did not contribute to the verdict. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010); *State v. Watkins*, 152 Idaho 764, 766, 274 P.3d 1279, 1281 (Ct. App. 2012).

The admission of improper evidence does not automatically require the declaration of a mistrial. *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct. App. 2004). We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it unless there is an overwhelming probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant. *Id.* Where evidence presents a close question for the jury, a curative instruction might be insufficient to remedy the prejudicial effect of damaging evidence. *Watkins*, 152 Idaho at 768, 274 P.3d at 1283.

3

In *State v. Rose*, 125 Idaho 266, 869 P.2d 583 (Ct. App. 1994), we held that a witness's inadmissible statement that the defendant had abused the victim before did not warrant a mistrial because there was sufficient other evidence against the defendant, the court properly gave a curative instruction, and there was no indication that the jury failed to follow the court's instruction. *Id.* at 269, 869 P.2d at 586. *But see State v. Shepherd*, 124 Idaho 54, 58, 855 P.2d 891, 895 (Ct. App. 1993) (holding mistrial was required where case turned solely on the victim's testimony and the court instructed the jury that it could consider the inadmissible statement toward the victim's credibility).

Thus, our analysis focuses on the strength of the evidence against Ruiz, the significance of the improperly disclosed information, and the district court's curative instruction. *See Watkins*, 152 Idaho at 768, 274 P.3d at 1783. Here, as in *Rose*, we hold that the court's curative instruction was sufficient to remedy any prejudicial effect of the improper statement. After sustaining Ruiz's objection, the district court gave the jury an immediate and forceful curative instruction. The court informed the jurors that the victim's father had never seen the text messages and they should strike from their minds his characterization of the messages. The court further instructed the jurors to only consider testimony regarding the actual content of the messages. The jurors indicated their ability to comply with the judge's instructions. The jurors then heard testimony from the victim, who testified that she received text messages from Ruiz such as "I miss you" and "I want to see you." The victim's cousin also testified that the messages she saw said, "I miss you," "when am I going to see you," and "I like you." Neither the victim nor the victim's cousin characterized the text messages as sexual or explicit. The father's improper characterization of the messages did not create a close evidentiary question for the jury such that the curative instruction could be deemed insufficient. In addition to the testimony about the actual content of the messages, the jury also heard the victim's testimony regarding the various acts of sexual misconduct that Ruiz committed against her. The jury also heard testimony about changes in the victim's demeanor and frequency in visiting the apartment where her mother and Ruiz lived after the alleged misconduct. Thus, the evidence of the actual content of the messages, combined with the court's curative instruction, was sufficient to remedy the prejudicial effect of the victim's father's improper characterization of the text messages.

In sum, the victim's father's characterization of the messages as sexual was not devastating to Ruiz in light of the other testimony regarding Ruiz's sexual misconduct. We are

4

convinced beyond a reasonable doubt that the father's improper characterization of the text messages was harmless in this case. Therefore, the district court did not err in denying Ruiz's motion for a mistrial.

**B.       Prosecutorial Misconduct in Closing Argument**

Ruiz next asserts that the prosecutor committed misconduct amounting to fundamental error by misstating the law regarding the reasonable doubt standard during closing arguments. Specifically, he asserts that the prosecutor's statement to jurors that "in order to acquit [Ruiz], you have to disbelieve the state's witnesses and you have to believe that [the victim] made it all up" lowered the State's burden of proof, thus depriving him of his right to a fair trial. While our criminal justice system is adversarial in nature and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).

Ruiz made no contemporaneous objection to the prosecutor's closing statement at trial. In *Perry*, the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Perry*, 150 Idaho at 226, 245 P.3d at 978.

In addressing the first prong of *Perry*, we first determine whether the statements in the prosecutor's closing arguments violated Ruiz's unwaived constitutional rights. Closing argument in a criminal case serves to sharpen and clarify the issues for the jury. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and help them remember and interpret the evidence. *Id.* Both sides are traditionally afforded great latitude in closing arguments to discuss the evidence and related inferences from their respective standpoints. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003). However, a misstatement to the jury regarding the State's burden of proof is impermissible because the requirement that the State prove every element of a crime beyond a reasonable doubt is grounded in the constitutional guarantee of due process. *See Jackson v. Virginia*, 443 U.S. 307, 309

(1979); *State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Erickson*, 148 Idaho 679, 685, 227 P.3d 933, 939 (Ct. App. 2010).

In the present case, the prosecutor made the following statement during closing argument:

> *In order to acquit him, you have to disbelieve the state's witnesses and you have to believe that [the victim] made it all up*. Motive is not an element, but it is definitely something to consider. Why would she make this up?
>
> If you believe her, that is proof beyond a reasonable doubt. *And so through this lens, this view of the evidence,* I'll now go through the evidence of the crime.

(emphasis added). Ruiz asserts that the italicized portions of this argument were improper because they misrepresented and diminished the State's burden of proof. We disagree. The prosecutor referenced the reasonable doubt standard numerous times throughout her closing argument to provide a framework for the jury to analyze the evidence. First, she directed the jurors to use the reasonable doubt instruction provided by the court.[1]

> [I]t's for you to decide who you believe, what you believe, and whether I have shown there is proof beyond a reasonable doubt that the defendant committed all three of the crimes with which he's been charged.
>
> How do you do that? You have the instruction of reasonable doubt. This is my burden to prove these crimes beyond a reasonable doubt.

Then, she discussed how witness credibility affected the State's burden of proof: "So how do you decide if the state has proven these crimes beyond a reasonable doubt? . . . It all boils down to credibility. You have to determine the credibility of all of the witnesses . . . and decide who you believe and what you believe." Then, she walked through the various testimonies presented during trial. At that point, the prosecutor stated, "In order to acquit him, you have to disbelieve the state's witnesses and you have to believe that [the victim] made it all up." Finally, the prosecutor walked the jury through each element of the crimes, asserting that each element had been proven beyond a reasonable doubt. When viewed in the context of the entire closing arguments, the complained-of statement is a permissible comment on the evaluation of the believability of the evidence presented, not an attempt to lower the burden of proof. Thus, because the complained-of statements in the prosecutor's closing arguments did not constitute

---

[1]    *Contra State v. Erickson*, 148 Idaho 679, 685, 227 P.3d 933, 939 (Ct. App. 2010) (finding misconduct where prosecutor invited jury to create its own standard of proof instead of applying reasonable doubt standard in its jury instructions).

misconduct in violation of Ruiz's unwaived constitutional rights, there was no fundamental error and we need not address the last two prongs of the *Perry* analysis.

## III.

## CONCLUSION

The district court did not err in denying Ruiz's mistrial motion because inclusion of the inadmissible statement about the text messages was harmless. Additionally, Ruiz has failed to show fundamental error regarding his claim of prosecutorial misconduct as to the diminishment of the State's burden of proof. Therefore, Ruiz's judgment of conviction is affirmed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.