**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 47090/47091**

| | |
|---|---|
| **STATE OF IDAHO,** | ) |
| | ) **Filed: November 12, 2021** |
| **Plaintiff-Respondent,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| **v.** | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| **MICHANGLO SMITH,** | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge; Hon. Thomas F. Neville, District Judge.

Judgments of conviction and sentences for felony domestic battery, misdemeanor assault, misdemeanor false imprisonment, and attempted strangulation, affirmed; order of restitution, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Michanglo Smith appeals from the judgments of conviction following jury verdicts finding him guilty of felony domestic battery, misdemeanor assault, misdemeanor false imprisonment, and attempted strangulation in these consolidated cases. Smith argues that multiple, reversible errors occurred during his trials. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

After a physical altercation with his girlfriend, Ms. Cole, during which she sustained significant injuries, Smith was charged with felony domestic battery, attempted strangulation, felony first degree kidnapping, and felony aggravated assault. The physical altercation began when Smith confronted Cole about a text message she received from her boss, Mr. Apker. At trial,

1

the State presented testimony from Apker, which included Apker recounting a prior incident where Smith had called the restaurant where Apker and Cole worked multiple times looking for Cole and later entered the restaurant and "apologized for harassing, calling the store, trying to get ahold of her, and bothering the place of business." In relation to this testimony, Smith made two relevance objections, on which the district court did not make a ruling, and later moved for a mistrial, which was denied.

Later in the trial, the State moved to reopen its case-in-chief after Smith requested that the jury instructions include a definition of "cohabitating," which defined the term as requiring an "intimate relationship[ ] such as boyfriend-girlfriend." The district court granted the State's motion, and the State called Cole and Detective Wigington to testify regarding the intimate nature of Smith and Cole's relationship. During his testimony, Wigington relayed a story told to him by Smith in which a female stranger at a bar propositioned him and Cole about a three-way sexual encounter, which Smith refused. This evidence was admitted over Smith's objection. The jury found Smith guilty of felony domestic battery, misdemeanor assault, and misdemeanor false imprisonment, but could not reach a verdict on the attempted strangulation charge.

Smith was re-tried on the attempted strangulation charge in a second trial. During the second trial, the State presented evidence concerning how bruising might appear on darker skin. This included testimony from a nurse who treated Cole's injuries and remarked on how they appeared. Smith objected to this evidence, arguing that it was improper expert testimony that was not disclosed pursuant to Idaho Criminal Rule 16. The district court overruled the objection, finding that there was no potential for unfair surprise. The jury found Smith guilty of attempted strangulation.

At sentencing, the district court ordered Smith to pay restitution, including restitution for Cole's lost wages. Smith timely appeals.

## II.

## ANALYSIS

Smith argues that the district court made several errors over the course of both trials and in awarding restitution. Specifically, Smith asserts that the district court erred by admitting irrelevant and prejudicial evidence concerning a prior encounter between Smith and Apker, denying Smith's motion for a mistrial, permitting the State to reopen its case-in-chief in the first trial, admitting irrelevant and prejudicial evidence recounting an incident where Smith was

2

sexually propositioned by a stranger at a bar, allowing the State to present undisclosed expert witness testimony during the second trial, and ordering $363 in restitution to Cole for lost wages. We address each of these contentions below.

## A.      Apker's Testimony

Smith claims that the district court erred by admitting the testimony of Apker over Smith's objection. Specifically, Smith argues that Apker's testimony describing a prior encounter with Smith where Smith repeatedly called the restaurant looking for Cole and later entered the restaurant to apologize for harassment was both irrelevant and prejudicial. The State notes that the district court did not rule on either of Smith's objections because the prosecutor moved on to other questions after the objections were made. Nevertheless, the State argues that the evidence was relevant to establish the relationship and history between Apker and Smith given that a text exchange between Apker and Cole was the impetus for the assault.

The trial court has broad discretion in determining the admissibility of evidence. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). A decision to admit or exclude evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

The relevance objections at issue regarding Apker's testimony occurred in the following context:

> Q.      [Referring to a text message depicted in State's Exhibit 30L,] . . . when you say in here, you came at me like a man the first time and I respected that, what did you mean by that?
> A.      The first time when he came in the store, when I met him, he came up to me and, like I said, introduced himself.
> Q.      Okay. And what had preceded his coming in, if you know?
> A.      The first time?
> Q.      Uh-huh.
> A.      They were having problems and he was trying to get ahold of her.
> Q.      How do you know that?
> A.      She came into work. My boss was there, and she said--
> [Defense counsel]: *Objection. Relevance to this prior contact.*

3

Q. [Prosecutor]: And if I can ask the witness to actually to--not to go into what she said.

Q. [By Prosecutor:] So I'm not asking what she said, but did something happen in the restaurant that you were aware of leading up to his coming?

A. It was my understanding they had--

[Defense counsel]: *Objection. Again, I'll object to relevance to the prior contact.*

[Prosecutor]: And I'll withdraw that question.

Q. [By Prosecutor]: Let me ask you this: While you were in the store that day that he came in and came up and introduced himself to you, had he called the restaurant a number of times?

A. He did.

Q. All right. And so when he introduced himself to you when he came into the restaurant, did he make a reference to his phone, kind of calling the restaurant a lot that day.

A. He did.

Q. And that's what I'm getting at. What did he tell you there when he came in?

A. Oh, he apologized for harassing, calling the store, trying to get ahold of her, and bothering the place of business.

Q. And so that's what you're referring to here in this text message?

A. Yes, ma'am.

(Emphasis added.)[1]

After Apker testified, Smith declined cross-examination and instead requested a recess. During the recess, Smith moved for a mistrial "based on the testimony that was elicited over [his] objection by [Mr.] Apker." Smith argued that Apker's testimony about Smith calling the restaurant multiple times and describing it as "harassing" and Apker's testimony that Smith "apologized" for his conduct was not relevant because it was "prior to the date of [the] incident" and was "highly prejudicial." The prosecutor responded that Apker did not testify as to a "pattern of harassment," but the testimony from Apker regarding his previous encounter with Smith in the restaurant "places into context the communication between the two that supports the State's theory in this case that [Smith] beat up [Cole] because of his misinterpretation of her relationship with Mr. Apker."

In response to the mistrial motion, the district court found that Apker's statements were relevant to establish identity, as Smith had also entered the restaurant on the day of the assault,

---

[1] As noted above, and as evident from the transcript, the district court did not expressly rule on Smith's relevancy objections. Thus, there is no adverse ruling at the time of the objections to consider. Even if the district court implicitly overruled the objection, it would be for the reasons the district court denied the motion for mistrial. Therefore, to the extent Smith now relies on Rule 403 in regard to the contemporaneous objection, that argument is not preserved.

4

and Smith's prior contact with Apker would explain how Apker knew Smith. Smith argues the testimony was not relevant because identity was not at issue in the case since Apker was not present in the restaurant to identify Smith on the night of the incident.

Idaho Rule of Evidence 401 defines relevant evidence as evidence having any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. Apker's testimony of the previous encounter was relevant to establish the relationship between Smith and Apker, as the district court stated "for the purpose of showing that Mr. Apker knew the defendant's identity from a meeting prior" to the date of the charged offenses. Part of the State's theory in this case was that Smith's aggression towards Cole began due to text messages she received from Apker on the night of the assault. The fact that Apker knew who Smith was because of a previous encounter was relevant as stated by the district court.[2]

The district court strongly instructed the jury that the evidence was only to be used for purposes of identity. We presume that the jury followed the district court's instruction. *State v. Iverson*, 155 Idaho 766, 776, 316 P.3d 682, 692 (Ct. App. 2014). Therefore, the district court did not err in admitting Apker's testimony of a prior encounter with Smith.

### B.     Motion for Mistrial

Smith next argues that the district court erred by denying his motion for a mistrial. This motion was made based on Apker's testimony, discussed above, which Smith argues was prejudicial and "continuously impacted" the trial to his "detriment." In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of

---

[2]     Apker also testified to his understanding that Smith was Cole's boyfriend, which is further relevant to the issue of cohabitation addressed in the context of the reopening of the State's rebuttal case.

reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

Because Apker's testimony was relevant, as discussed above, and the district court limited how the jury could consider the evidence, the district court made no reversible error in admitting the evidence. In addition to instructing the jury that it could only consider Apker's testimony "for the purpose of showing that Mr. Apker knew the defendant's identity from a meeting prior" to the date of the charged offenses, the district court instructed the jury it could not consider Apker's "testimony about the frequency or purposes of [prior] telephone calls to the store." Jurors are presumed to follow the court's instructions. *State v. Ruiz*, 159 Idaho 722, 724, 366 P.3d 644, 646 (Ct. App. 2015). Smith nevertheless argues that this "limiting instruction was insufficient to cure the harm" because the "irrelevant and overly prejudicial evidence served only to distract the jury from the ultimate question of guilt or innocence." While the presumption that the jury followed the instruction may be overcome, in order to do so Smith must show "there is an overwhelming probability that the jury [was] unable to follow the court's instructions and a strong likelihood that the effect of the evidence [was] devastating to [him]." *Id.* at 724-25, 366 P.3d at 646-47. Smith's conclusory assertion that the challenged evidence was "distract[ing]" to the jury is insufficient to overcome the presumption that the jury followed the court's instruction and falls far short of demonstrating the evidence was devastating to his case. The district court did not err in denying Smith's motion for a mistrial.

## C.     Reopening State's Rebuttal Case

Smith next argues that the district court abused its discretion in allowing the State to reopen its "case-in-chief" to prove that Cole and Smith were cohabitating. The State responds that the district court's decision to reopen was a reasonable exercise of its discretion.

We first note that, contrary to Smith's assertion, the district court did not allow the State to reopen its case-in-chief. Rather, the district court expressly said it was allowing the State to reopen for purposes of presenting rebuttal evidence. The district court stated: "what I'm doing is reopening rebuttal." As such, the district court indicated Smith would "still have the opportunity for surrebuttal." The district court advised the jury accordingly, explaining: "I have permitted the State to reopen its rebuttal case." We also note that Smith did not object to the district court's

6

decision to do so. Rather, Smith only objected to the State calling Detective Wigington as part of its rebuttal, arguing that the nature of Smith's relationship with Cole "need[ed] to come from the person involved in the relationship," not from the detective. Smith's general challenge to the district court allowing the State to reopen its rebuttal case is, therefore, not preserved. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992) (stating that issues not raised below may not be considered for the first time on appeal).

Even if Smith preserved a general challenge to the district court's decision to allow the State to reopen its rebuttal case, he has failed to show the district court abused its discretion by doing so. The district court has the power to reopen a case prior to judgment. A district court's decision to reopen a case will be reviewed for an abuse of discretion. *See State v. Cutler*, 94 Idaho 295, 298, 486 P.2d 1008, 1011 (1971).

Based on the holding in *State v. Schulz*, 151 Idaho 863, 867, 264 P.3d 970, 974 (2011)[3], at the close of the trial, Smith proposed a jury instruction that included the definition of "cohabitating" for purposes of the domestic battery with traumatic injury charge (Count III). Although Smith's requested instruction was untimely under the court's scheduling order, the district court gave the following instruction based on the language in *Schulz*: "The term 'cohabitating' in the definition of 'household member' is a long-recognized term of art plainly denoting an intimate relationship. The phrase 'are cohabitating, regardless of whether they have married or hold themselves out to be husband and wife' includes intimate relationships such as boyfriend-girlfriend relationships." Smith did not object to the district court's modification of his proposed instruction.

The defense had presented Smith's testimony that he and Cole were not in an intimate relationship at the time of the incident. The State had presented evidence that Cole and Smith were living together and were in a dating relationship. While a dating relationship (i.e., boyfriend-girlfriend) is an intimate relationship, the manner in which the issue was raised below seems to suggest that Smith was asserting that something more, such as a sexual relationship was what was contemplated by the phrase "intimate relationship." The State had not presented direct evidence that Cole and Smith were in a relationship more "intimate" than living together and dating. Smith

---

[3]     The precise holding in *Schulz* was that "the definition of 'household member' plainly limits its application to intimate partners and, thus, does not extend to a child living with her father." *State v. Schulz*, 151 Idaho 863, 864, 264 P.3d 970, 971 (2011).

acknowledged that the instruction was untimely, but indicated that it was not until the State put on its case "that this issue truly came up." Consequently, the State requested to reopen its case in order to present additional evidence that Cole and Smith were in such an intimate relationship.[4] The district court found that, although the State was put fairly on notice that they had to prove that Smith and Cole were "household members" under the statute, they reasonably could not have anticipated Smith's testimony that he and Cole were not in an intimate relationship when they moved in together. The district court ordered that the State be permitted to reopen its rebuttal case on the nature of Smith and Cole's relationship.

The district court did not abuse its discretion in allowing the State to reopen its rebuttal case. While the State was put on notice that it had to prove Smith and Cole were in an "intimate relationship" as explained in *Schulz*, the district court has broad discretion to allow a case to be reopened. After the untimely proposed instruction was submitted, the State was concerned that it had not put forward enough evidence to meet what Smith seemed to suggest was required to show an intimate relationship. The district court determined that it was understandable based on only learning that the issue of the nature of an "intimate relationship" would be a vital part of Smith's defense when the untimely instruction were submitted. The district court did not abuse its discretion in allowing the State to provide additional evidence on the issue upon reopening its rebuttal case. Further, Smith was not prejudiced by allowing the State to present evidence on this point. Although Smith asserts that the district court's actions allowed the State to "eviscerate [his] planned defense," the presentation of rebuttal evidence does not constitute unfair prejudice. *See State v. Butcher*, 137 Idaho 125, 133, 44 P.3d 1180, 1188 (Ct. App. 2002) (explaining that rebuttal evidence is evidence "which explains, repels, counteracts, or disproves evidence which has been introduced by or on behalf of the adverse party").

## D. Detective Wigington's Testimony

Smith next argues that the district court erred in admitting the testimony of Detective Wigington concerning an incident where a stranger sexually propositioned Smith and Cole at a bar and was rejected by Smith. Smith argues that this evidence was not relevant, as its only purpose was to demonstrate that Smith was "sexually attractive to a female stranger in a bar." The

---

[4] The Court in *Schulz* did not define the term "intimate." In addition, the pattern Idaho jury instruction, I.C.J.I. 1277, does not include the term "intimate."

State contends that the evidence had some probative value as to the nature of Smith and Cole's relationship, which was relevant to prove the cohabitation requirement as defined in *Schulz*.

The State's purpose in presenting this testimony was to establish that Smith and Cole were in an intimate relationship for purposes of showing cohabitation. The fact that Smith was sexually propositioned by a stranger at a bar while with Cole and refused does have some tendency to show that he and Cole may have been in such an intimate relationship. *See* I.R.E. 401 (providing that evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence). Therefore, the district court did not err in admitting Detective Wigington's testimony.

### E. Treatment Provider's Testimony

Smith next argues that the district court abused its discretion in the second trial by admitting testimony of Nurse Wardle, who treated Cole after her injuries, regarding whether Cole's skin was bruised at the time she examined her. Smith argues that this testimony was expert testimony that the State presented without disclosure as required by I.C.R. 16. The State responds that the testimony did not constitute expert testimony subject to the disclosure requirements of I.C.R. 16(b)(7).

During direct examination, the prosecutor presented photo exhibits to Wardle and asked whether the discoloration on Cole's skin was a bruise. After Wardle testified that she was not sure at the time the photo was taken whether Cole's skin was bruised since she was not familiar with the normal coloration of Cole's skin, the prosecutor showed Wardle a more recent photo of Cole's skin and asked if it appeared that the discoloration had resolved. Wardle answered that it had, and the prosecutor asked what the disappearance of the discoloration may indicate about the marks. Smith objected, arguing that "[t]here was no disclosure made that [Wardle] would be proffering this type of a [medical] opinion." The district court overruled the objection, concluding there was no "unfair surprise" in relation to the testimony. Wardle then testified that it was possible that the prior discoloration was due to bruising.

On re-direct after cross-examination, the prosecutor asked Wardle if she had ever observed bruising on darker skin such as Cole's and how a bruise might appear on darker skin tones. Smith again objected on grounds that the defense was "not given notice of this line of prospective testimony." Smith argued there was "unfair surprise" because the testimony was not "disclosed as any type of medical opinion or testimony that this witness would be giving." The district court

overruled this objection, finding that the question was asking about observations rather than medical opinions, and that there was no risk of unfair surprise.

The district court did not err in admitting Wardle's testimony. Although Smith did not identify any provision of I.C.R. 16 as a basis for his objection at trial, on appeal he argues that Wardle's objected-to testimony fell within the disclosure requirements of I.C.R. 16(b)(7), which requires the disclosure of expert testimony under I.R.E 702, 703, and 705, including a summary of the witness's opinions, the facts and data for those opinions, and the witness's qualifications. As the district court concluded, Wardle's testimony was not that of an expert, but was based on her observations of Cole during treatment and the photo exhibits of Cole. Changes in discoloration and the fact that bruising may be harder to see on darker skin and may be more easily identified after it resolves is rationally based on perception, I.R.E. 701, and is not based on scientific, technical, or other specialized knowledge within the scope of I.R.E. 702. Thus, Wardle's testimony did not constitute expert testimony subject to the disclosure requirements of I.C.R. 16(b)(7).

## F. Restitution

Smith last argues that the district court erred by ordering $363 in restitution to Cole for lost wages. Specifically, Smith argues that the State failed to present substantial and competent evidence that Cole would have actually worked thirty-three hours during the eight days she was unable to work due to her injuries. The State disagrees, arguing the evidence was sufficient to support this portion of the district court's restitution award.

The decision regarding whether to order restitution, and in what amount, is within the district court's discretion guided by factors in Idaho Code § 19-5304(7). *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011). The determination of the amount of restitution is a question of fact for the trial court whose findings will not be disturbed if supported by substantial evidence. *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010).

At the restitution hearing, Cole sought restitution for an eight-day period for which she testified she was unable to work due to her injuries. A representative from the Crime Victims Compensation Fund testified that she had received paperwork from Cole's employer, which showed that Cole worked an average of thirty-three hours per week at $11 per hour. Cole's actual work schedule was not submitted to the district court. The district court found that Cole was entitled to restitution in the amount of $363 (33 hours at $11 per hour).

10

Smith argues that the district court's findings were speculative and not supported by substantial evidence since Cole's actual work schedule was unknown. We disagree. The testimony of Cole and the representative from the Crime Victims Compensation Fund provided substantial evidence that Cole averaged thirty-three hours of work a week, at $11 per hour, and that she was scheduled to work during the week she missed as a result of Smith's crimes. The district court's finding under a preponderance of the evidence standard that Cole would have worked thirty-three hours over an eight-day period is supported by substantial evidence and inferences therefrom. Smith has failed to show otherwise.

## III.
## CONCLUSION

The district court did not err in admitting testimony in either trial, denying Smith's motion for a mistrial, allowing the State to reopen its rebuttal case, or ordering $363 in restitution to Cole for lost wages. Therefore, we affirm the district court's judgments of conviction and its order for restitution in these consolidated cases.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.