**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49229**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 10, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| RANDAL GARY TOWELL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment of conviction for three counts of lewd conduct with a child under sixteen and two counts of sexual abuse of a minor under sixteen, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Randal Gary Towell appeals from his judgment of conviction for three counts of lewd conduct with a child under sixteen and two counts of sexual abuse of a minor under sixteen. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Towell started sexually abusing his child when she was eleven years old. At fourteen years old, the child disclosed the abuse to two of her friends, who told the child to "try and get some proof" of the abuse. Later, when Towell began another sexual advance, the child started an audio-recording application on her cell phone. After this incident of sexual abuse, the child messaged one of her friends via social media. In response, the friend drove to the child's house and she climbed out of her bedroom window and got into her friend's vehicle. The friend then

1

drove the child to a hospital. Although the child hesitated for a while before going into the hospital, she ultimately went to the emergency room, described multiple incidents of sexual abuse to a physician, and underwent a physical examination. The child also gave her cell phone to one of her friends to charge the cell phone's battery. The friend retrieved the audio recording of the incident from the cell phone and sent a copy of the recording to the police. Three days later, the child was interviewed at a Child at Risk Evaluation Services (CARES) facility. Other children who lived in Towell's home were also interviewed at CARES.

The State charged Towell with three counts of lewd conduct with a child under sixteen, Idaho Code § 18-1508, and two counts of sexual abuse of a minor under sixteen, I.C. § 18-1506. Prior to trial, the State moved in limine to "exclude evidence from the interviews performed by [the] CARES [facility] with individuals other than" the child, contending that this evidence was irrelevant. The other individuals were foster children who also lived in the home. At a hearing on the motion, Towell indicated he had no objection and "had not intended to introduce those portions of the CARES interview." The district court granted the motion.

At trial, a detective testified that he attended the CARES interview. When asked if he was referring to the child's CARES interview, the detective responded, "So there was [the child's] and the other children as well." Both the State and Towell objected. The district court sustained the objections and instructed the jury to "disregard the last question and answer." Towell moved for a mistrial, contending that the district court's pretrial order excluded evidence of the other CARES interviews. The district court denied the motion for a mistrial.

The examining physician also testified at trial. When the State asked the physician to relate what the child told the physician, Towell raised a hearsay objection. The district court overruled the objection, holding that the statements were admissible under the hearsay exception for statements made for a medical purpose. Ultimately, the jury found Towell guilty of all the charged offenses. Towell appeals.

## II.

## ANALYSIS

Towell asserts the district court erred in denying his motion for a mistrial and in admitting the child's statements to the physician pursuant to the exception in Idaho Rule of Evidence 803(4). The State responds that Towell has not shown error in the denial of his motion for a mistrial. The State further responds that Towell has failed to show error in the admission of

the child's statements to the physician because the child had a medical purpose and that, if there was error, the error was harmless. We affirm. The detective's stricken reference to other CARES interviews was not reversible error and any error in admitting the child's statements to the physician was harmless.

## A.  Motion for a Mistrial

Towell asserts that the detective's testimony regarding the other CARES interviews violated the district court's pretrial order, that this testimony was unfairly prejudicial, and that the jury instruction to disregard this testimony was not sufficient to cure the prejudicial effect. The State responds that the detective's testimony did not violate the pretrial order, that Towell failed to preserve his argument regarding prejudice, and that any prejudice was cured by the jury instruction. We hold that the district court did not err in interpreting its own order and that the detective's stricken testimony, for which the district court provided a curative instruction, does not warrant a new trial.

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant when there occurs during the trial, either inside or outside the courtroom, an error or legal defect in the proceedings or conduct that is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). The threshold inquiry in evaluating the denial of a motion for mistrial is whether the State introduced error or whether conduct prejudicial to the defendant occurred at trial. *See* I.C.R. 29.1(a); *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993).

Towell's sole basis for his claim of error is that the detective's stricken testimony referring to interviews of "the other children" violated the district court's pretrial order granting the State's motion to exclude evidence "from the interviews performed by St. Luke's CARES with individuals other than" "the named victim in this case." The district court rejected Towell's interpretation of its in limine order, explaining:

> It was the State's own motion to exclude the CARES interviews of any other individuals other than the victim. The Court's express order in that order--the Court's ruling in that order was that the State's motion to exclude evidence from interviews performed by St. Luke's CARES of individuals other than the alleged victim in the case is granted.
> The Court's order does not say the fact that other CARES interviews were performed is--is barred from court. So in this instance, neither the question nor the answer violated the Court's order regarding the State's previous motion in limine.

3

Now, that still does not address the issue regarding [the detective's] answer, which the Court does find to not be relevant, and so it was appropriate for the State to move to strike. It was appropriate for [the prosecutor] to object to the answer.

The rules of construction applicable to contracts and written documents apply to the interpretation of court orders. *Sun Valley Ranches, Inc. v. Prairie Power Co-op, Inc.*, 124 Idaho 125, 131, 856 P.2d 1292, 1298 (Ct. App. 1993). Whether an order is ambiguous is a question of law. *Suchan v. Suchan*, 113 Idaho 102, 106, 741 P.2d 1289, 1293 (1986). If the order is ambiguous, this Court must accept the trial court's interpretation of its own order unless the interpretation is clearly erroneous. *Id.* at 108, 741 P.2d at 1295.

Even if there is some abstract ambiguity in the district court's order regarding whether the word "from" referred to the contents of the CARES interview of the other children or the fact of the interview, the district court's interpretation of its own order is not clearly erroneous. Neither the State nor Towell argued to the district court as part of the motion in limine that the fact interviews occurred should be excluded. To the contrary, the State's motion asserted, in relevant part: "CARES interviewed [Towell's] other children and foster children and inquired about other, unrelated, possible sexual acts. Under I.R.E. 401, this evidence is irrelevant and does not have any tendency to make any fact more or less probable than it would be without the evidence." The State's motion, which was the subject of the district court's order, addressed the contents of the interview. Understood in this way, as the district court indicated it did, there is no clear error by the district court.

As to Towell's argument that the alleged violation of the district court's pretrial order entitled him to a mistrial, Towell provides no authority to support the proposition that such, by itself and without a violation of a rule of law, is a basis for a mistrial. As observed by another state, "the contention that an argument violated an order granting a motion *in limine* does not, in fact, address the necessary issue of whether the argument was actually proper or improper under the law." *People v. Ward*, 862 N.E.2d 1102, 1142 (Ill. App. Ct. 2007), *abrogated on other grounds by People v. Ayres*, 88 N.E.3d 732 (Ill. 2017). Even so, the district court did not err in denying Towell's motion for a mistrial.

4

In reviewing the denial of a motion for mistrial in a criminal case,[1] the appellate court focuses on the continuing impact on the trial of the incident that triggered the mistrial motion. *State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). The denial of a motion for mistrial will be disturbed on appeal only if the incident giving rise to the motion, viewed retrospectively, constituted reversible error. *Id.* Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). In determining whether the error that forms the basis for a motion for a mistrial is reversible, we apply the harmless error test.[2] *State v. Smith*, 170 Idaho 800, 810, 516 P.3d 1071, 1081 (2022). This standard requires weighing the probative force of the record, as a whole, while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* The State bears the burden of demonstrating that the error is harmless beyond a reasonable doubt. *Id.* The reviewing court must take into account what effect the error had or reasonably may have had on the jury (in the context of the total setting) and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

---

[1]    It appears the standard of review is different if the trial court *grants* a motion for mistrial. In such cases, an abuse of discretion standard applies. *See State v. Manley*, 142 Idaho 338, 342, 127 P.3d 954, 958 (2005); *State v. Hoyle*, 140 Idaho 679, 683, 99 P.3d 1069, 1073 (2004); *State v. Brackett*, 160 Idaho 619, 628, 377 P.3d 1082, 1091 (Ct. App. 2016). And, in civil cases, the standard of review of a motion for mistrial, regardless of whether it is granted or denied, is also an abuse of discretion. *See Herrett v. St. Luke's Magic Valley Reg'l Med. Ctr., Ltd.*, 164 Idaho 129, 132, 426 P.3d 480, 483 (2018) (noting that decision to grant or deny motion for mistrial is discretionary); *Ballard v. Kerr*, 160 Idaho 674, 716, 378 P.3d 464, 506 (2016) (declining to apply *Urquhart* standard of review in civil case). The reason for the differing standards is unclear.

[2]    In his appellate reply brief, Towell asserts the State argues reversible error under an incorrect standard and "conflates [the] harmless error standard, which places the burden on the State to prove the objected-to error was harmless beyond a reasonable doubt, with the reversible error standard for reviewing the denial of a mistrial motion." (Citation omitted). We recognize that prior case law placed the burden on the appellant to show reversible error. *See State v. Hedger*, 115 Idaho 598, 601, 768 P.2d 1331, 1334 (1989); *State v. Richardson*, 168 Idaho 25, 31 n.4, 478 P.3d 754, 760 n.4 (Ct. App. 2020). However, the Idaho Supreme Court in *Smith* (which the Court issued after Towell filed his opening brief) clarified that the analysis for reversible error under the mistrial standard involves the same analysis for harmless error, including that the burden shifts to the State if the defendant shows error. *State v. Smith*, 170 Idaho 800, 810, 516 P.3d 1071, 1081 (2022). In doing so, *Smith* implicitly overruled the prior case law holding that the burden remained with the appellant. Consequently, the State does not argue under an incorrect standard.

We first address the State's assertion that Towell's "argument regarding the associated prejudice [from the detective's testimony] is unpreserved" because Towell did not argue below, as he does on appeal, that he was prejudiced by the false implication that other children alleged Towell abused them without permitting them to inform the jury otherwise. As the State notes, appellate court review is limited to the evidence, theories, and arguments that were presented below. *See State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). In response, Towell asserts that his argument regarding prejudice is preserved because the district court "issued a ruling finding the error was 'not prejudicial.'" In support of his position, Towell relies on the proposition that a party preserves an issue for appeal if the trial court issues an adverse ruling. *See State v. Miramontes*, 170 Idaho 920, 925, 517 P.3d 849, 854 (2022). The preservation point in the context of a motion for mistrial does not fit neatly within the standard of review relative to such a motion because the mistrial standard from *Urquhart* is one applied by an appellate court, not a standard utilized by a trial court. The *Urquhart* standard of review encompasses the entire record, including evidence and conduct occurring *after* a trial court decides a motion for a mistrial. *See Urquhart*, 105 Idaho at 95, 665 P.2d at 1105 (holding that the "focus is upon the *continuing* impact on the trial") (emphasis added). Nevertheless, the district court correctly noted that Towell did not "indicate[ ] in any manner in which the fact that other kids were interviewed is prejudicial." Instead, Towell only asserted, without elaboration, that "once the bell is rung, it can't be undone." As noted, Towell's prejudice argument on appeal is that the detective's "false suggestion of additional allegations or disclosures by other sexual abuse victims was highly inflammatory and plainly prejudicial." That argument was not advanced to the district court. Towell's assertion that he preserved the argument by "t[ying] his claim of prejudice" to the district court's pretrial order is without merit.

To the extent the district court's denial of Towell's motion for mistrial, *i.e.*, the district court's adverse ruling, is evaluated at the time it was made based on the arguments that were presented, we conclude there was no error. As the district noted, there was no "error or legal defect in the proceedings" or conduct that was prejudicial to Towell that deprived him of a fair trial based on the stricken testimony from the detective. *See* I.C.R. 29.1 (providing that mistrial may be declared on motion of defendant when there is "an error or legal defect in the proceedings, or conduct that is prejudicial to the defendant and deprives the defendant of a fair trial"). Immediately after the detective's testimony and the parties' objections, the district court

6

instructed the jury to "disregard the last question and answer." We normally presume that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the trial court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987); *State v. Johnson*, 163 Idaho 412, 422, 414 P.3d 234, 244 (2018).[3]

Towell contends there is such a probability in this case because the State, in its opening argument to the jury, represented that CARES is "a group of dedicated professionals who interview child sex abuse victims." Building on this representation, Towell asserts the detective's testimony regarding the other CARES interviews "improperly, and falsely, suggested there were allegations that [Towell] had abused" the other children in the home.[4] This is not the only inference, much less the most reasonable inference, that can be drawn. There was other testimony at trial, to which Towell did not object, that the Idaho Department of Health and Welfare removed all of the other children from the home following the child's allegations against Towell and that this was done to "make sure" that "the children are safe." The jury could infer

---

[3]    Towell asserts the curative instruction was insufficient under a different standard, specifically, that "where evidence presents a close question for the jury, a curative instruction might be insufficient to remedy the prejudicial effect of damaging evidence." *State v. Ruiz*, 159 Idaho 722, 725, 366 P.3d 644, 647 (Ct. App. 2015). The State relies on the standard articulated above. This reveals a split in this Court's case law regarding the standard for a curative instruction. In three published cases, we have applied the standard relied on by Towell. *See Ruiz*, 159 Idaho at 725, 366 P.3d at 647; *State v. Watkins*, 152 Idaho 764, 768, 274 P.3d 1279, 1283 (Ct. App. 2012); *State v. Keyes*, 150 Idaho 543, 545, 248 P.3d 1278, 1280 (Ct. App. 2011). The Idaho Supreme Court in *Johnson*, however, adopted the test more commonly applied by this Court. *See State v. Johnson*, 163 Idaho 412, 422, 414 P.3d 234, 244 (2018); *see, e.g.*, *State v. Maldonado*, 164 Idaho 702, 706, 435 P.3d 14, 18 (Ct. App. 2018); *State v. Hernandez*, 163 Idaho 9, 13, 407 P.3d 596, 600 (Ct. App. 2017); *State v. Norton*, 151 Idaho 176, 193, 254 P.3d 77, 94 (Ct. App. 2011); *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct. App. 2004). By doing so, the Idaho Supreme Court resolved the split in our case law and implicitly abrogated *Ruiz*, *Watkins*, and *Keyes* to the extent those cases applied a different standard for determining the effectiveness of curative instructions.

[4]    Towell also asserts that the prejudicial effect of the detective's stricken testimony was "exacerbated" by the physician's testimony that Towell was a "predator." We disagree. The physician's testimony made it clear that she considered a person to be a "predator" if the person sexually assaulted just *one* child. With this meaning of the word "predator," the prejudicial effect of this label remains the same regardless of the number of children. Even if the jury disregarded the curative instruction and inferred that there were additional allegations of child sex abuse, the prejudicial effect from this inference would not gain force by dint of Towell being labeled a "predator."

from this that the CARES interviews were conducted as a matter of course to ensure the other children were safe and not because of additional allegations. In addition, the detective's passing reference to the other CARES interviews was not repeated by the State's other witnesses or in closing argument. There is not an overwhelming probability that the jury was unable to follow the district court's instruction to disregard the detective's stricken testimony regarding other interviews. As such, Towell has not overcome the presumption that the jury followed the curative instruction. Because the alleged error--the detective's statement--was stricken and the jury is presumed to have disregarded it, there is no evidence to evaluate in a reversible error analysis. We, therefore, deny relief on Towell's mistrial claim.

**B. Hearsay**

Towell asserts the district court erred in admitting the child's statements to the physician because, according to Towell, the State failed to show that the child had a medical purpose in making the statements. The State responds that the district court correctly found that the child made the statements to the physician with a medical purpose and that, if there was error, it was harmless. We hold that the district court did not err in admitting the testimony and, even assuming error in the admission of the statements, any error was harmless.

**1. The hearsay statements are admissible**

The district court did not err by permitting Dr. Reese to testify under I.R.E. 803(4). The Idaho Supreme Court has held that the trial court has broad discretion to admit hearsay evidence under one of the exceptions and the appellate courts will not overturn that exercise of discretion absent a clear abuse. *State v. Christensen*, 166 Idaho 373, 378, 458 P.3d 951, 956 (2020). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

While hearsay statements are generally not admissible, I.R.E. 803(4) provides an exception to that general rule where the out-of-court statements were made for medical diagnosis or treatment. Such statements are not excluded by the hearsay rule regardless of whether the declarant is available as a witness. Such statements must be made for purposes of medical diagnosis or treatment; describe medical history, past or present symptoms, pain, sensations or

8

the source thereof; and be reasonably pertinent to diagnosis or treatment. *State v. Kay*, 129 Idaho 507, 518, 927 P.2d 897, 908 (Ct. App. 1996). The trial court considers the totality of the circumstances in evaluating whether a child's statements were made for medical diagnosis or treatment. *Id.* A non-exclusive list of the guiding factors would include:

> [T]he child's age; whether the child understands the role of the physician in general; whether the child was suffering pain or distress at the time; whether the child's statements were inappropriately influenced by others, as by leading questions from the physician or a previous suggestive interrogation by another adult; whether the examination occurred during the course of a custody battle or other family dispute; the child's ability and willingness to communicate freely with the physician; the child's ability to differentiate between truth and fantasy in the examination itself and in other contexts; whether the examination was initiated by an attorney (which would suggest that its purpose was for litigation rather than treatment); and the timing of the examination in relation to the trial.

*Id.* So long as there is little reason to doubt the child's motivation, a trial court may infer the criteria of I.R.E. 803(4) are satisfied. *Id.*

Here, the district court, applying these considerations and reviewing the totality of circumstances, acted well within its discretion by admitting the hearsay evidence under I.R.E. 803(4). When the child victim (N.T.) spoke to Dr. Reese, she was fourteen years old. This Court has held that a child as young as four years old can be expected to realize that health care is the focus of statements made to a physician at a hospital. *Kay*, 129 Idaho at 519, 927 P.3d at 909. N.T. did not elect to make abuse disclosures directly to law enforcement and did not have her friends take her to a police station. Instead, albeit with some reluctance due to potential consequences, she went to a hospital. There N.T. described the circumstances to Dr. Reese who testified that she made her medical decision based on the history provided by N.T. and her physical examination. Dr. Reese explained that the statements from the child, including the source of the abuse, helped in the medical diagnosis. N.T. also disclosed, as a consequence of the abuse, self-cutting, wishing she was dead, and thinking of suicide, all of which Dr. Reese considered in her medical diagnosis and treatment plan. Towell's attempt to suggest an accusatory, as opposed to medical, motivation ignores the totality of circumstances and is inappropriately "myopically" focused. *See Christensen*, 166 Idaho at 378, 458 P.3d at 956. For these reasons, the district court did not err by admitting the hearsay statements under I.R.E. 803(4).

9

### 2. Any error is harmless

Even if the district court erred in admitting the statements, any such error is harmless. Error is not reversible unless it is prejudicial. *Stell*, 162 Idaho at 830, 405 P.3d at 615. Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record, as a whole, while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos*, 328 U.S. at 764.

We first consider the probative force of the error. As the State notes, the physician's testimony regarding what the child told the physician is "largely duplicative of [the child's] prior testimony." For example, the physician related that the child said that Towell "would just grab [her] butt or give [her] a hug or a kiss." The child testified to the same effect at trial. Towell asserts that the "hearsay statements improperly corroborated [the child's] testimony, by serving as a [sic] prior consistent statements." The hearsay statements relayed by the physician were not "corroboration" in the strict sense because the statements were not from a third party. *Cf. State v. Harris*, 132 Idaho 843, 847-48, 979 P.2d 1201, 1205-06 (1999) (addressing impact of testimony from third party defense witness). But Towell's argument reflects a concern in our case law that, when credibility is crucial to a case, even cumulative evidence can result in reversible error. *See id.* (holding that exclusion of defense witness was not harmless error because it was "a case of the alleged victim's word against the defendant's word" and defense witness would have corroborated defendant's testimony that top was down on his convertible, contrary to victim's assertion that top was up). When the credibility of a witness is at issue,

10

evidence of prior consistent statements by the witness may have a bolstering effect. *See State v. Jones*, 125 Idaho 477, 488, 873 P.2d 122, 133 (1994), *overruled on other grounds by Montgomery*, 163 Idaho 40, 408 P.3d 38; *see also Cook v. State*, 157 Idaho 775, 781, 339 P.3d 1179, 1185 (Ct. App. 2014) (applying *Jones* in the post-conviction context). Generally, any bolstering effect, standing alone, is insufficient to show reversible error when the jury had an opportunity to observe the witness. *See Jones*, 125 Idaho at 488, 873 P.2d at 133; *see also Cook*, 157 Idaho at 781, 339 P.3d at 1185 (applying *Jones* in post-conviction context). Here, the physician's testimony bolstered the victim's credibility by providing prior consistent statements. But, because the jury observed the child's trial testimony, the bolstering effect is not sufficient to show reversible error by itself.

We recognize that not all the hearsay statements to the physician were duplicated by the child's testimony. Specifically, the physician testified that the child: (1) mentioned that Towell, after sexually abusing her, would say "I didn't mean to" and "I know I shouldn't do these things"; (2) shared secrets with Towell, including that the child's "mom didn't know [Towell] was still a smoker"; (3) said that Towell would delete photographs she took in her bedroom and that Towell said "he didn't want any pictures of him in her room"; and (4) "felt trapped in that she admitted to self-cutting and wishing she was dead and thinking of suicide in the past." The child did not make these specific statements during her trial testimony. However, the first two statements are largely cumulative. The child testified that Towell, after one incident of abuse, came back about "five minutes later to say, 'I'm sorry.'" This apology is largely synonymous with Towell reportedly saying, "I didn't mean to," or, "I know I shouldn't do these things." In addition, the recording of Towell's interview with the detective shows Towell informing the detective that the child caught Towell smoking and that he asked the child to not tell her mother. Because other evidence duplicated the information in these two statements, the probative force of the first two statements was minimal. The third and fourth statements about Towell deleting pictures could indicate a desire to avoid proof that he had been in the child's room and about the child feeling suicidal could appeal to the passions of the jury. Consequently, these two statements carried some probative force. However, the probative force of the other evidence in the record is high.

The child testified that Towell started the last incident of abuse by tickling her. The child interrupted the tickling by telling Towell that a person had messaged her on social media. With

11

this ruse, the child managed to start the audio-recording application on her cell phone. The child testified that Towell "grabbed [her] and threw [her] back on the bed to get back on top of [her]" and began tickling her again. The child told Towell to stop tickling her. She testified that Towell put her "hands above [her] head" and "started like rubbing his penis on [her] vagina." (The child later clarified that this contact occurred over clothing.) According to the child, this continued for three-to-four minutes and Towell "would grunt like these weird noises." At one point, Towell's "belt was getting into [the child's] skin" and the child told Towell that "it hurt." The child also told Towell to "stop" and "get off," but, "after a little bit, [the child] stopped saying anything because it wasn't going to work anyways." The child testified that the incident ended when she pushed Towell off by using her legs.

The audio on the recording, which is approximately six minutes in length, corroborates the child's testimony. At the beginning, Towell says the word "tickle" and the child says "stop" repeatedly. After about a minute, sounds consistent with a bedsprings squeaking can be heard. Later, the squeaking sounds become more rhythmic and Towell begins making grunting and sighing noises. Near the end, the child says "ow" several times.

In contrast, Towell's account of the same incident differed markedly from the child's testimony. At trial, the State entered a recording of a detective's interview with Towell. During the interview, Towell said that the child "flip[ped] [him] off." According to Towell, he responded by grabbing the child's finger, the child pulled her hands up, and both of them fell over onto the bed. Towell said that he was straddling the child, with one of his legs between the child's legs. The detective asked Towell if the part on the bed was "a quick, thirty seconds or whatever" and that he responded with "yeah" and "it wasn't long." Notably absent from Towell's account is any mention of tickling or explanation for why the bedsprings would be squeaking for the length of time heard on the audio recording. The audio recording also does not contain any statements regarding the child "flipping" Towell off. In short, the audio recording confirms the child's testimony and undermines Towell's account.

In addition, during the interview, Towell also discussed an event that occurred months earlier without being prompted by the detective to address that specific event. According to the child, Towell sexually abused her on the day of that event. As the State notes, Towell's decision to describe his interactions with the child on that day indicate "his consciousness of guilt and his suspicion that [the child] had alleged abuse on that day."

12

Other witnesses supported the child's testimony. For instance, the child's mother testified that, in addition to tickling the child, Towell kissed the child on the lips once when she was thirteen or fourteen. The mother also testified that the child sat on Towell's lap once and also told the mother that Towell had "touched [the child's] butt or something." Finally, two of the child's friends indicated that the child had disclosed the abuse to them prior to the last incident. Weighing the probative value of the error against the probative value of the record as a whole without the error, we are satisfied beyond a reasonable doubt that the error did not contribute to the jury's verdict. Thus, even assuming the district court erred in admitting the child's hearsay statements to the physician, the error is harmless.

## IV.

## CONCLUSION

Towell has failed to show that he is entitled to a new trial based on the stricken testimony of the detective. The district court did not err in admitting the child's hearsay statements. In any event, any error was harmless. Consequently, Towell's judgment of conviction for three counts of lewd conduct with a child under sixteen and two counts of sexual abuse of a minor under sixteen is affirmed.

Judge BRAILSFORD **CONCURS**.

Chief Judge LORELLO **CONCURS IN THE RESULT**.