**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50150**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 25, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| JOSHUA ERIC MOLINA, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment of conviction for three counts of felony injury to a child, one count of misdemeanor injury to a child, and one count of first degree murder, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Justin M. Curtis and Ben P. McGreevy, Deputy Appellate Public Defenders, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Joshua Eric Molina appeals from his judgment of conviction for three counts of felony injury to a child, one count of misdemeanor injury to a child, and first degree murder. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from injuries sustained by L.A., a twenty-month-old child, that ultimately resulted in her death. L.A. was the daughter of Molina's girlfriend. At all times relevant to this case, Molina shared an apartment with a roommate. Molina also had a three-year-old son who lived with Molina and the roommate. On August 6, 2017, Molina's girlfriend and L.A. moved into the apartment and shared a bedroom with Molina.

1

On October 8, 2017, a couple of months after moving into the apartment, L.A. was life-flighted from Twin Falls to Boise due to severe head trauma. A pediatrician who cared for L.A. in Boise also reported she had two bone fractures in her lower arm, one bone fracture in her upper arm, four broken ribs, a cracked skull, and brain bleeding. L.A. died from her injuries on October 14.

Molina's girlfriend was interviewed by police on October 8 and 9 during L.A.'s hospitalization and later testified she was untruthful during these interviews because she wanted to protect Molina. For example, she claimed Molina never babysat L.A. On October 20, Molina's girlfriend was arrested and charged with first degree murder and several felony counts of injury to a child. She was again interviewed upon her arrest and later testified that she was untruthful at the beginning of that interview but eventually began to tell the truth. When she was provided counsel in March 2018, she again met with officers and was honest regarding Molina's involvement with L.A. On June 21, 2018, she entered into a plea agreement in which she agreed to plead guilty to five counts of injury to a child and the State agreed to dismiss the first degree murder charge.

Molina was also charged with four counts of felony injury to a child, I.C. § 18-1501, and first degree murder, I.C. § 18-4001. The murder charge alleged two theories: torture murder and aggravated battery. A jury trial was held in February and March of 2020. Several witnesses testified including Molina's girlfriend and Molina's roommate. Molina was found guilty of one count of felony injury to a child and one count of misdemeanor injury to a child as a lesser-included offense. The jury was unable to reach a verdict on the remaining counts, resulting in a mistrial on those counts.

A second jury trial was held in May and June of 2022. Molina's girlfriend and Molina's roommate again appeared as witnesses. Molina was ultimately found guilty of all the remaining counts. Molina appeals.

## II.

## STANDARD OF REVIEW

When reviewing the trial court's evidentiary rulings, this Court applies an abuse discretion of standard. *State v. Jones*, 160 Idaho 449, 450, 375 P.3d 279, 280 (2016). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to

determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Molina contends the district court abused its discretion by failing to act consistently with the applicable legal standards when admitting prior consistent statements from his girlfriend and his roommate. The State responds that: (1) Molina's argument as to his girlfriend is not preserved; (2) even if the argument were preserved, the district court properly permitted the prosecutor to elicit the prior consistent statements to rebut Molina's implication of inconsistent testimony; (3) the district court properly permitted the re-direct examination of Molina's roommate about his prior trial testimony for rehabilitation purposes; and (4) any alleged error is harmless. We hold that Molina's challenge to the admission of his girlfriend's prior testimony is unpreserved; Molina has failed to show error in the admission of his roommate's prior testimony; and, even assuming error in the admission of any of the challenged testimony, the error was harmless.

Idaho Rule of Evidence 801(d) provides that a statement is not hearsay if it meets the following conditions:

> (1)     A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
> > (A)     is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
> > (B)     is consistent with the declarant's testimony and is offered:
> > > (i)     to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
> > > (ii)     to rehabilitate the declarant's credibility as a witness when attacked on another ground; or
> > (C)     identifies a person as someone the declarant perceived earlier.

Molina asserts the district court erroneously concluded that prior consistent statements by his girlfriend and his roommate were permissible pursuant to I.R.E 801(d)(1)(B)(i) because the statements were not made prior to their motive to lie. In support of this argument, Molina relies

3

on *State v. Joy*, 155 Idaho 1, 304 P.3d 276 (2013). In *Joy*, the Idaho Supreme Court considered an argument that the district court erred in admitting Joy's wife's preliminary hearing testimony as prior consistent testimony pursuant to I.R.E. 801(d)(1)(B)(i) because, Joy argued, his wife's motive to lie arose prior to the preliminary hearing. *Joy*, 155 Idaho at 13, 304 P.3d at 288. The Court agreed and held the rule "only permits introduction of out-of-court statements that were made prior to the time when the declarant would have a motive to lie." *Id*. at 14, 304 P.3d at 289. The Court reasoned:

> [Wife] would have had a motive for fabrication regarding the events on the night in question prior to her testimony at the preliminary hearing. The record shows that [wife] and [Joy] were divorcing and that [wife] filed for divorce before the preliminary hearing. Both parties sought a significant portion of the marital property, and the divorce thus provided [wife] with a motive to lie. Consequently, the evidence was not proper under Rule 801(d)(1)(B) because the preliminary hearing testimony did not precede her motive to lie.

*Joy*, 155 Idaho at 14, 304 P.3d at 289. Based on *Joy*, Molina asserts the district court abused its discretion by admitting the prior consistent statements from his girlfriend and roommate. We separately address the testimony of both witnesses below.

### A.      Molina's Girlfriend's Testimony

At the 2022 trial, Molina's girlfriend testified she started noticing bruising on L.A. after moving into Molina's home. She testified she watched L.A. during the day on August 28, 2017, and Molina began watching L.A. shortly after he got off work at 10 p.m. Molina's girlfriend testified she left to pick up her son at his father's house at 10:36 p.m. and arrived there at 10:42 p.m. and noticed bruising on L.A. the following morning. On cross-examination, Molina's girlfriend acknowledged there was no discussion with Molina that she needed to wait for him to get home from work to leave to pick up her son. However, she testified that, when Molina messaged that he thought she had already picked up her son, she responded, "I didn't think you wanted me to. I'm going to put [L.A.] in bed and go get him." She stated it would not be common to leave L.A. in bed without Molina there and, when asked if she could have asked their roommate to watch L.A., she "would have asked [Molina] if it was okay first." Molina cited numerous instances when his girlfriend previously told police and medical staff different stories that did not coincide with her testimony.

4

Relevant to this appeal, to rebut the inference that Molina's girlfriend left L.A. alone or with their roommate on August 28, 2017, the State, on redirect, sought to introduce Molina's girlfriend's prior testimony from the first trial. When the prosecutor indicated he was going to introduce Molina's girlfriend's prior testimony from March 2, 2020, the following exchange took place:

> [Defense]: Your Honor, I'm going to object as improper impeachment.
> [Prosecutor]: It's a prior consistent statement.
> [Defense]: I'm going to object.
> [The Court]: And what's the basis?
> [Defense]: That it's inappropriate. It's bolstering.
> [The Court]: Okay. Overruled on that basis.

The prosecutor then asked a series of questions to which Molina's girlfriend responded as follows:

> Q. You were asked, "So from Exhibit 116, we know that you picked up [your son] at what time?" And you said, "10:42." Do you remember that testimony from yesterday?
> A. Yes.
> Q. Is that accurate?
> A. Yes.
> Q. Going back to the reading, I'm at line 19: "And what time did [Molina] get off work that day?" And your answer was "10:00." And this was in 2020, you said that. Is that still true?
> A. Yes.
> Q. The question then is, "So who was home with [L.A]?" And at 22, you say, "While I picked up [my son]?" And the answer, "Yes." That's what the questioner meant. And you said, "[Molina] was." Do you remember saying that back then?
> A. Yes.
> Q. Is that the same as what you testified to here?
> A. Yes.
> Q. Is that the truth?
> A. Yes.

Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). To preserve an issue for appellate review, a party must raise both the issue and the party's position on the issue before the trial court. *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). Additionally, evidentiary objections must clearly state the specific ground for the objection, unless the basis for the objection is apparent from context. *State v. Hall*, 163 Idaho 744, 772, 419 P.3d

5

1042, 1070 (2018). Objections to the admissibility of evidence on one basis do not preserve separate and different bases for exclusion. *Id*. Thus, a party can fail to preserve an evidentiary issue for appeal not only by failing to make a specific objection, but also by making a different objection than the one raised on appeal. *See United States v. Iglesias*, 535 F.3d 150, 158 (3d Cir. 2008) (holding objection that "the best evidence available is on the witness stand" did not preserve a hearsay objection to introduction of the witness's prior statement).

Molina acknowledges that he did not use the terms "hearsay" or "prior consistent statement" when objecting to the introduction of his girlfriend's prior trial testimony. However, Molina contends that his objection for "bolstering" suffices to preserve a challenge to whether the testimony qualified as a prior consistent statement under I.R.E. 801(d)(1). He reasons that "the purpose of introducing prior consistent statements is to bolster a witness's credibility," noting the language of the rule provides that prior consistent statements are admissible to "rebut" a charge of fabrication or "rehabilitate" a witness's credibility. He further argues "even if the objection was not specific, it was certainly apparent from the context because the State responded that the statements were admissible as prior consistent statements." We disagree that Molina preserved any challenge to the applicability of I.R.E. 801(d)(1).

This Court has recognized that, when the credibility of a witness is at issue, evidence of prior consistent statements by the witness may have a bolstering effect. *State v. Towell*, 172 Idaho 648, 657-58, 535 P.3d 624, 633-34 (Ct. App. 2023). While the effect of prior consistent statements may have a bolstering effect, "bolstering" is not an objection pursuant to any particular rule of evidence, nor is it an objection or argument that the testimony does not qualify as a prior consistent statement. *Joy* is illustrative. In *Joy*, when the State sought to elicit prior consistent statements from Joy's wife's preliminary hearing testimony, Joy objected on the ground that the testimony was hearsay and the State countered that the testimony was not hearsay and was admissible as a prior consistent statement. *Joy*, 155 Idaho at 15, 304 P.3d at 290.

The record shows that Molina did not argue before the district court that his girlfriend's statements during the 2020 trial were inadmissible hearsay. In particular, Molina did not argue that the challenged testimony did not qualify as prior consistent statements because the statements were made after his girlfriend had a motive to lie. Rather, Molina objected based on "improper

6

impeachment" and "bolstering." We decline to construe Molina's "bolstering" objection as a hearsay objection or a challenge to whether the statement was a prior consistent statement. We also decline to rule that the basis for Molina's objection is apparent from the context based on a statement made by the prosecutor in response to Molina's "improper impeachment" objection. The prosecutor's characterization of the testimony as a prior consistent statement does not constitute a hearsay objection, or any other objection, on behalf of the defense. Nor did Molina's "bolstering" response provide the district court with any basis from which to analyze whether the proposed statements met the nonhearsay definition for prior consistent statements under I.R.E. 801(d)(1)(B). Such an analysis would have required consideration of whether there was an express or implied charge that Molina's girlfriend recently fabricated her testimony or acted from a recent improper influence or motive or whether the statements would be proper to rehabilitate her credibility if it was attacked on another ground. *See id.* Molina did not articulate any basis, nor is any basis apparent from the record, for the district court to assess the proffered testimony through this lens.

As previously stated, a party fails to preserve an issue for appeal not only by failing to make a specific objection, but also by making a different objection than the one claimed on appeal. *Iglesias*, 535 F.3d at 158. Because Molina did not respond to the prosecutor's assertion that the testimony was admissible as a prior consistent statement with the argument he now presents on appeal--that the girlfriend's prior consistent statements are inadmissible because they were not made prior to the witness's motive to lie--he has not preserved the issue for appeal. That Molina subsequently objected to prior trial testimony during his roommate's testimony on hearsay grounds further supports that it was not his position that his girlfriend's testimony was inadmissible pursuant to any particular rule of evidence. Additionally, that Molina made a separate objection to his roommate's prior testimony on bolstering grounds indicates Molina understands these objections to be distinct from one another.

While Molina objected to the admission of his girlfriend's prior testimony, he failed to articulate any evidentiary rule as a basis for his objection. Consequently, whether Molina's girlfriend's 2020 trial testimony was a prior consistent statement, i.e., occurred after she had a

motive to lie, is not preserved for appeal. As such, we will not consider the merits of Molina's evidentiary claim challenging his girlfriend's testimony.

**B.      Molina's Roommate's Testimony**

At the 2022 trial, the following exchange took place between the prosecutor and Molina's roommate with respect to Molina's conduct:

> Q.      Was he harsh with discipline?
> A.      He could be a little harsh.
> Q.      With which kids?
> A.      [Molina's son] was kind of, you know, a lot more solid than the other ones. And so he was a little bit more harsh with him. He got harsh with [L.A.]. I saw him toss [L.A.] into the crib, and I was like, "You can't do that. That's not okay."
> Q.      How did he toss her?
> A.      He grabbed her by the arm and like threw her into the crib.

After Molina claimed L.A. had been beat up by his son, Molina's roommate told Molina, "If I see her like that again, I'm going to have to call the cops or CPS, because that's not right." Molina responded, "Just let me know beforehand."

Molina's roommate testified that he was in his bedroom when L.A. suffered her first seizure on October 7, 2017. He stated Molina came to his room with L.A. in his arms and said L.A. was having a seizure. Molina and his roommate went to the living room. The roommate got a small package of frozen hamburger to put on L.A. "trying to get her to snap out of it," and Molina blew marijuana smoke in her face.

When asked about the following day when L.A. had her second seizure, Molina's roommate testified, "I was out in the living room with [Molina's girlfriend], talking to her. And then [Molina] announced from their bedroom that, 'She's doing it again.' You know, basically she was having another seizure." Molina's roommate stated he was sitting with Molina's girlfriend on the living room couch and Molina was with L.A. in the bedroom when the second seizure occurred.

Molina's roommate also testified he did not remember being interviewed by a private investigator on February 6, 2020. The prosecutor indicated he had previously played an audio recording of that interview for Molina's roommate, but he testified he still did not remember the interview and noted that on the recording he sounded "[i]nebriated" and had "[d]efinitely been

8

drinking." On cross-examination, Molina had his roommate read a portion of the interview transcript where his roommate told the investigator that L.A. was with Molina's girlfriend on the living room couch when the second seizure occurred, and he did not know where Molina was. The district court instructed the jury to consider this testimony for impeachment purposes only.

On re-direct, Molina's roommate testified the interview statements were not accurate and that, when the second seizure occurred, he was with Molina's girlfriend on the living room couch and Molina was in the bedroom with L.A. The State then sought to have the roommate read a portion of his testimony from the 2020 trial, and Molina objected on hearsay and bolstering grounds. The district court overruled the objections, concluding the testimony "was clearly not hearsay since it's under oath"[1] and "not bolstering since it's rehabilitating." Molina's roommate then read his prior testimony from the 2020 trial where he stated he was sitting on the living room couch with Molina's girlfriend and Molina was with L.A. in the bedroom when the second seizure occurred.

Molina argues the district court abused its discretion in permitting these prior consistent statements. Like his argument regarding the admission of his girlfriend's testimony, Molina relies on *Joy* and asserts his roommate's testimony from the 2020 trial is inadmissible under I.R.E. 801(d)(1)(B)(i) because the statements did not precede his roommate's motive to lie with regard to the second seizure and his interview with the investigator. Molina asserts that I.R.E. 801(d)(1)(B)(ii) "plainly does not apply, as he is not attacking [his girlfriend's or his roommate's] credibility on 'another ground.' For instance, he did not assert that they had a faulty memory of the events at issue."

In response, the State notes that Molina questioned his roommate about prior statements to police officers and the investigator to generally attack the roommate's credibility without expressly or impliedly charging recent fabrication, improper influence, or motive, as provided in I.R.E. 801(d)(1)(B)(i). Therefore, the State argues Molina has failed to show on appeal that the impeachment with his roommate's prior statements is limited to that subsection. The State submits

---

[1] The parties acknowledge the district court erred when concluding the prior testimony was not hearsay based on the reasoning it was under oath.

that Molina's roommate's prior consistent statements are admissible pursuant to I.R.E. 801(d)(1)(B)(ii), which allows prior consistent statements "to rehabilitate the declarant's credibility as a witness when attacked on another ground." We agree with the State.

The record reflects that Molina attempted to impeach his roommate on grounds other than recent fabrication, improper influence, or motive; and therefore, the prior consistent statements were admissible. On cross-examination, Molina repeatedly attacked his roommate's ability to remember. For instance, Molina had the following exchange with his roommate regarding his meeting with the private investigator:

> Q.  You don't recall speaking with [the private investigator] in February of 2020?
> A.  No, sir.
> Q.  The private investigator?
> A.  Yeah, I know who you're talking about, but I don't remember talking to him.
> Q.  And you've heard the audio of that?
> A.  Yes, sir.

Molina likewise questioned his roommate about his faulty memory regarding communications with police officers:

> Q.  Well, let's talk about the times that you've spoken with the officers. Okay? When was the first time?
> A.  I don't remember.
> Q.  You don't remember meeting with an officer around the time that they were searching the house?
> A.  I'm sure I did. I just don't recall it.
> Q.  You don't recall what you told them?
> A.  No.
> Q.  Do you recall telling them that you'd never been--that you had never been around [L.A.]?
> A.  I don't remember saying that.

And again:

> Q.  Do you recall ever speaking to the officers again?
> A.  No, I don't.
> Q.  If I reference that in March of 2018, meeting--meeting with the officers, do you remember that?
> A.  No.
> Q.  At any point before [Molina] was arrested, did another officer -- any officer come and talk to you any more?

10

A.    Not that I can recall.

Molina's roommate's prior consistent statements were admissible pursuant to I.R.E. 801(d)(1)(B)(ii) for rehabilitation purposes after Molina attacked his roommate's ability to remember. The district court's reasoning that the 2020 trial testimony was admissible because "it's rehabilitating" indicates the ruling was based on I.R.E. 801(d)(1)(B)(ii). Molina has failed to show the district court abused its discretion when it admitted his roommate's prior testimony.

## C.    Harmless Error

Even assuming Molina's girlfriend's testimony and Molina's roommate's testimony was inadmissible, the error would have been harmless in light of the relative unimportance of Molina's girlfriend's testimony regarding August 28, the plethora of other evidence that Molina abused L.A., and given that the challenged testimony of Molina's roommate was introduced for impeachment purposes. The effect of the alleged errors is minimal compared to the probative force of the record.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *Yates v. Evatt*, 500 U.S. 391, 403 (1991); *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened,

11

which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Molina was ultimately found guilty of: Count 1--injury to child for breaking L.A.'s wrist "on or about September 18, 2017"; Count 2--injury to child for inflicting "blunt-force trauma to [L.A.'s] face and/or head" "on or about or between September 22 and September 27, 2017"; Count 3--injury to child for causing "bruising to [L.A.'s] throat, face, ears, and/or collarbone" "on or about or between September 28 and October 7, 2017"; Count 4--injury to child for "blowing marijuana smoke into [L.A's] face instead of seeking emergency medical care" "on or about or between October 7 and October 8, 2017"; Count 5--murder in the first degree under the torture theory for acts committed "on or between August 9, 2017, and October 14, 2017," and/or under the aggravated battery theory for acts committed "on or about or between October 7, 2017, and October 14, 2017."

The challenged testimony of Molina's girlfriend related to the events on the night of August 28, 2017--specifically that she left L.A. in Molina's care and noticed bruising on L.A. the following morning. The only timeframe this falls into for the counts for which Molina was found guilty is first degree murder under the torture theory. To the extent the jury relied on the torture theory to reach a first degree murder conviction, there is overwhelming support for the jury's verdict. The jury concluded Molina broke L.A.'s wrist; inflicted blunt-force trauma to L.A.'s face and/or head; caused bruising to her throat, face, ears, and/or collarbone; and blew marijuana smoke in her face. Any bruising inflicted on L.A. on August 28 is of little relevance to the first degree murder conviction under the torture theory; therefore, any error in admitting Molina's girlfriend's testimony regarding the events of that evening is harmless. Furthermore, Molina's girlfriend testified about numerous other instances of abuse inflicted on L.A. while L.A. was in Molina's care, and Molina's roommate also testified regarding Molina's harsh treatment of L.A.

Likewise, any error in admitting the challenged testimony of Molina's roommate was harmless. The district court instructed the jury that the testimony could only be used for impeachment purposes:

> Ladies and gentlemen of the jury, you've heard testimony of [Molina's roommate] concerning a statement made by him prior to this trial. The believability of a witness may be challenged by evidence that on some former occasion the witness

12

> made a statement that was not consistent with the witness's testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding whether you believe the witness's testimony. This evidence of an earlier statement has been admitted to help you decide if you believe [the roommate's] testimony. You cannot use these earlier statements as evidence in this case.

We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Given the jury was instructed not to use the challenged testimony of Molina's roommate as substantive evidence, any error in its admission is harmless.

## IV.

## CONCLUSION

Molina failed to preserve his claim that the district court erred by admitting his girlfriend's prior trial testimony. Molina has also failed to show the district court abused its discretion when it admitted Molina's roommate's prior testimony. Even assuming error in the admission of the challenged testimony, any alleged errors are harmless. Consequently, Molina's judgment of conviction for three counts of felony injury to a child, one count of misdemeanor injury to a child, and first degree murder is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.